UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TAMMY L. RADFORD,

      Plaintiff,

-v-                                                  CASE NO. 2:10-CV-16-FTM-DNF

MICHAEL J. ASTRUE,
**Commissioner of Social Security,**

      **Defendant.**
_____/

**OPINION AND ORDER**[1]

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security of the Social Security Administration ("the Commissioner") denying her claim for Supplemental Security Income (SSI)[2]. The Plaintiff timely pursued and exhausted her administrative remedies making this claim ripe for judicial review pursuant to 42 U.S.C. § 405(g). The Commissioner has filed a transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda. For the reasons set forth below, the Court finds that the Commissioner's decision is due to be **AFFIRMED.**

---

[1]     Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated November 1, 2010. (Doc.# 27).

[2]     Because the disability definitions for DIB and SSI are identical, cases under one statute are persuasive as to the other. *Patterson v. Bowen*, 799 F.2d 1455, 1456 (n.1 (11th Cir. 1986); *McCruter v. Bowen*, 791 F.2d 1544, 1545 n.2 (11TH Cir. 1986).

I.       SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND STANDARD OF REVIEW

The plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423 (d) (1)(A); 1382c(a)(3)(A). The Commissioner has established a five-step sequential evaluation process for determining whether the plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 416.920(a)-(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

On February 25, 2008, Plaintiff filed an application for Supplemental Security Income, asserting a disability onset date of January 13, 2008. [Tr. 59, 66]. Plaintiff's application was denied initially and upon reconsideration (Tr. 42-44). A hearing was held in West Palm Beach, Florida on November 24, 2008, before Administrative Law Judge ("ALJ") Irwin Bernstein. On May 6, 2009, ALJ Bernstein issued a decision denying benefits. [Tr. 6-16]. The Appeals Council denied the Plaintiff's request for review on August 21, 2009, making the ALJ's decision the final decision of the Commissioner. 20 C.F.R. §§ 416.1400(a)(5); 422.210(a). [Tr. 1-3].

At Step 1 the ALJ found Plaintiff had not engaged in substantial gainful activity since February 25, 2008, the protective filing date of her application for supplemental security income. 20 C.F.R. 416.974. [Tr. 3]. At Step 2 the ALJ found Plaintiff suffered from severe impairment(s) or combination of impairments: asthma, chronic obstructive pulmonary disorder (COPD), obesity, and back pain (Tr. 3). 20 C.F.R. § 416.920(c). At Step 3 the ALJ found Plaintiff did not have an impairment or combination of impairments which strictly meet or medically equal the criteria of any listed impairments shown in 20 C.F.R. 404, Subpart P, Appendix 1 (Tr. 3). At Step 4 the ALJ determined Plaintiff had the residual functional capacity to perform a full range of sedentary work as defined in 20 C.F.R. 416.967(a). (Tr. 4). Additionally, the Plaintiff was 38 years old on the date her application was filed and the ALJ determined Plaintiff to be a "younger individual (Age 18-44)". 20 C.F.R. § 416.963. The ALJ found Plaintiff not disabled at step five of the sequential evaluation by applying the Medical Vocational Guidelines ("GRIDS") 20 C.F.R. Part 404, Subpart P, Appendix 2. (Tr. 15).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Walden v. Schweiker*, 672 F.2d 835, 838-9

(11th Cir. 1982).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. REVIEW OF FACTS AND CONCLUSIONS OF LAW

### (1) Background Facts:

Plaintiff was born on September 22, 1969 (Tr. 59) and was 39 years old at the time of the ALJ's decision. Plaintiff has a ninth grade education, which is defined as a limited education and her past work includes work as a fast food worker and housekeeper (Tr. 75, 81). Plaintiff claimed that she stopped working in December 2007 due to constant back and abdominal pain, asthma, and chronic obstructive pulmonary disease (COPD) and stated that her conditions caused shortness of breath and difficulty sitting, standing, or walking for prolonged periods (Tr. 74, 100, 104, 106, 108-09). Plaintiff later claimed she had difficulty with lifting because of problems with her shoulder and with various postural positions (Tr. 117, 119).

Plaintiff alleges disability as of January 13, 2008, and stopped working in December of 2007, due to her medical condition. (Tr. 59, 75). In an (undated) Disability Report, Plaintiff reported she had performed work as a food preparer and as a housekeeper.

On December 4, 2006, Plaintiff went to the emergency room at Treasure Coast PCI with complaints of a swollen and red stomach. She was diagnosed with cellulitis of the trunk and released with the disposition of : "[H]om (sic) routine Home/Self Care". (Tr. 212-213). On December 5, 2006, Plaintiff returned for the results of her lab work. Plaintiff was additionally diagnosed with "[j]aundice, asthma, unspecified w (acute) exacerbation". Plaintiff was released again with the disposition of home/self care. (Tr. 210). On July 31, 2007, Plaintiff returned to Treasure Coast PCI with complaints of abdominal pain, unspecified site. (Tr. 208-209) Plaintiff was released again with the disposition of home/self care. On January 13, 2008, Plaintiff again reported to Treasure Coast PCI with a viral infection and bronchitis and released with home/self care. (T. 206-207).

On January 15, 2008, Plaintiff was admitted to Raulerson Hospital in Okeechobee, Florida due to an acute exacerbation of COPD, i.e. difficulty breathing, with a history of asthma. Dr. Arif Shakoor examined Ms. Radford in a pulmonary consult. (T. 160). Plaintiff was given oxygen, IV, bronchodilators and IV Avelox. Her heart size was found to be in the upper limits of normal. (T. 161). The doctor noted Plaintiff had possible sleep apnea and increasing shortness of breath, a productive cough and Plaintiff advised of excessive daytime somnolence and morning headaches. (T. 163). Plaintiff was

successfully treated and released on January 18, 2008, with instructions to follow-up with her physician at the clinic. (Tr. 160).

Plaintiff was referred for a chest x-ray due to her cough on February 6, 2008. Findings revealed: "[T]here is bilateral hyperinflation. There is no focal infiltrate, pneumothorax or pleural fluid collection. The heart is within normal size/limits. IMPRESSION: "[C]hronic obstructive pulmonary disease. No acute cardiopulmonary disease is detected". (Tr. 186).

On May 12, 2008, Plaintiff was seen by Dr. J.R. Cardiff, M.D., for a physical examination at the request of the Commissioner. Plaintiff had complaints of back pain, asthma and COPD. Plaintiff reported that her lower back pain had remained unchanged for at least four to five years. Plaintiff said it hurt her on a daily basis and radiated into both legs to her knees. Plaintiff advised she had to stop and rest on a frequent basis while cleaning the house. Plaintiff advised she utilized an electric cart when she shopped, could stand for 10 to 15 minutes, sit for about twenty minutes and walk only a few feet. Plaintiff also reported difficulty bending and lifting and had developed episodic shortness of breath with wheezing, especially upon exposure to strong smells, such as smoke or perfume.

Plaintiff reported being diagnosed with asthma at the hospital and that in January of 2008, she was admitted to the hospital for six days and diagnosed with COPD. Plaintiff was prescribed an inhaler and a nebulizer. (T. 148). Plaintiff reported that she had intermittent low abdominal pain, and her stomach became hard. She also had episodes of epigastric burning. (T. 148). The only medications she was taking at the time where

Albuterol via her inhaler and nebulizer.

Upon examination, the doctor found that she was sixty-four inches tall and weighed 269 pounds. She had tenderness in her left abdomen and low abdomen. The doctor also found that she had positive straight leg raising for low back pain in all positions. (T. 149). The doctor found that she did not have obvious upper arm abnormalities. Her motor strength was found to be 4/5 in all extremities. She had a mild reduction in the range of motion in her lumbar spine. (T. 157). She had normal spirometry without significant change after bronchodilator. (T. 149). The doctor diagnosed her with morbid obesity, chronic low back pain, episodic dyspnea, ruled out COPD, limited education and knowledge, recurrent abdominal pain of unknown etiology, recurrent epigastric distress, possibly due to GERD. The doctor opined that she had the functional capacity to sit, stand and walk for short distances. She could lift and handle lightweight objects. She had essentially normal fine motor function. He found she could probably concentrate, socially interact and adapt, but "[m]ay be limited by her knowledge and intelligence". (T. 150).

On May 21, 2008, Jennifer Bruza, a medical consultant and non-examining physician, completed a Physical Residual Functional Capacity Assessment, dated May 21, 2008. Ms. Bruza commented that although Plaintiff reports back pain of 4-5 years she never sought treatment, reflexes were normal, gait normal, no assistive devices. Further, the Plaintiff has no source of treatments, "[s]eeks tx at ER, has only gone to Raulerson Hosp as needed". Ms. Bruza found that Plaintiff was "[p]artially credible, has no on-going treatment, stopped work due to not being needed any longer. Morbid obesity

presents factor in functioning limiting ROM". (Tr. 224). Additionally, Plaintiff would need to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, ect. (T. 223).

In a Physical Residual Functional Capacity Assessment, dated August 13, 2008, the non-examining physician, John A. Dawson, M.D., opined that Plaintiff would never be able to work around ladders, ropes or scaffolds, only occasionally balance, kneel, crouch or crawl. (T. 231). Dr. Dawson determined Plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and carry 25 pounds, stand and/or walk about 6 hours in an 8 hour day, sit for about 6 hours in a 8 hour day, and was unlimited in her ability to push and/or pull (hand and/or foot controls). The record shows Plaintiff has history for asthma but only one admission of hospitalization over several years. However, Plaintiff advised of actually having 5-6 attacks a year that did not require a doctor's intervention. Dr. Dawson found Plaintiff to be partly credible with some limitation of residual function. However, he did not find the severity of the symptoms and the alleged effect on function consistent with the total medical and non-medical evidence, including: statements by Plaintiff and others, observations regarding her activities of daily living and alterations of usual behavior or habits. Dr. Dawson also made the finding that Plaintiff should avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, ect. (T. 232-234).

On November 24, 2008, Plaintiff appeared, *pro se*, and testified at her hearing in West Palm Beach, Florida. (T. 19). Plaintiff testified that she was thirty-nine years old at the time of the hearing. (T. 20). Plaintiff testified that she was five feet, seven inches tall

and weighed 260 pounds, that she had completed the ninth grade and last worked as a hostess at a restaurant. (T. 22). Plaintiff advised she stopped working there on January 19, 2008, after working for a month. Plaintiff advised she stopped working after being admitted to the hospital due to her COPD and stopped working due to back pain. (T. 23, 24). Plaintiff did not go to a doctor because she did not have health insurance but went to the emergency room as an alternative. (T. 25). Plaintiff testified that she could walk half a block, could stand for less than ten to fifteen minutes and could not bend or kneel and could sit for fifteen minutes at a time. (T. 26). She testified that she attempts to do some house cleaning, but "it took all day". (T. 27).

**B.  SPECIFIC ISSUES:**

   **(1)  THE ALJ PROPERLY USED THE MEDICAL-VOCATIONAL GUIDELINES TO FIND PLAINTIFF WAS NOT DISABLED**

The ALJ determined that Plaintiff was not disabled at step five of the sequential evaluation process (Tr. 15-16). At step five, a claimant will be found not disabled if a significant number of jobs exist in the national economy that she could perform. 20 C.F.R. § 416.920(c). The ALJ determines whether jobs exist in significant numbers by relying on the Grids, 20 C.F.R. § 416.966(d), pt. 404, subpt. P, app. 2, or on the testimony of a vocational expert (VE), 20 C.F.R. § 416.966(e).

The Grids take into account a claimant's vocational factors, age, education, and work experience, and RFC and direct a finding of disabled or not disabled. 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00. The finding of not disabled is based on administrative notice that a significant number of jobs exist in the national economy that someone with

the claimant's vocational factors and RFC could perform. 20 C.F.R. § 416.966(e). The Grids may not be used to direct a finding on disability if a claimant cannot perform substantially all of the activities at a particular exertional level or if a claimant has non-exertional limitations that significantly limit basic work skills. 20 C.F.R. § 416.969a(c), (d); Social Security Ruling (SSR) 83-11p. (*Phillips v. Barnhart*, 357 F.3d 1232, 1242-43 (11th Cir. 2004).

Plaintiff argues that the ALJ was not permitted to rely on the Grids and instead needed to obtain VE testimony because she has significant non-exertional limitations including pain and environmental, postural, and mental limitations. Plaintiff's argument is without merit. Plaintiff cannot claim that just because she has pain that the ALJ is precluded from use of the Grids. Plaintiff must instead provide evidence to show that her pain causes a non-exertional limitation that significantly limits her basic work skills such as difficulty concentrating or depression. 20 C.F.R. § 416.969 a(c); SSR 96-4p. Plaintiff makes no such allegation and has failed to show what any significant non-exertional limitation is caused by her pain. *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996).

Additionally, the ALJ evaluated Plaintiff's statements about the severity of her pain and found them not credible to the extent they conflicted with the ability to perform the full range of sedentary work. Plaintiff has failed to show that her pain significantly limits her ability to perform basic work activities such that she cannot perform sedentary work.

In regards to Plaintiff's alleged environmental limitations, no objective evidence exists in the record to establish that Plaintiff has environmental limitations. The only

evidence is Plaintiff's own statements that her breathing is aggravated by strong smells (Tr. 148) and the opinion of a reviewing physician (Tr. 233). The ALJ found Plaintiff's subjective allegations partially credible to the extent they coincided with her ability to perform a full range of sedentary work (Tr. 14). Plaintiff's allegations of environmental limitations do not provide sufficient evidence to undermine the ALJ's decision. 20 C.F.R. § 416.929; SSR 96-7p. The ALJ gave the state agency physician's opinion some weight, noting that it was "generally consistent" with the evidence, but the ALJ was not bound by the state agency physician's determination. SSR 96-6p. Plaintiff similarly makes an argument that she had postural limitations based on the reviewing state agency physician's opinion, but again, the ALJ is not bound by the state agency physician's opinion, SSR 96-6p, and he has the sole responsibility to determine the extent of Plaintiff's limitations given the medical evidence and other evidence. 20 C.F.R. § 416.945.

Even if Plaintiff could show that she had all the postural limitations recommended by the state agency physician, because of the nature of sedentary work, she would still not be precluded from performing substantially all of the activities at that level. Sedentary work does not usually require climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling. SSR 96-9p. It also only occasionally requires the ability to stoop. Therefore, Plaintiff has not met her burden to show that she suffered from environmental or postural limitations that would prevent her from performing substantially all of the activities at the sedentary level. 20 C.F.R. § 416.912(a).

In regards to Plaintiff's mental limitations, Plaintiff has not shown that she has a medically determinable impairment that could produce such symptoms. 20 C.F.R § 416.929(b); SSR 96-4p. Plaintiff denied that she needed special education classes (Tr. 78) and provides no objective evidence of mental limitations. Plaintiff relies solely on the opinion of Dr. Cardiff who stated that Plaintiff "may be limited by her knowledge and intelligence" (Tr. 150), but Dr. Cardiff failed to perform any objective tests to support that statement or to establish the existence of an impairment as is required by the regulations (Tr. 148-150). 20 C.F.R. §§ 416.908, 416.929(b). Even if Dr. Cardiff's opinion could establish the existence of a mental impairment, Plaintiff has still failed to prove that her impairment was severe and had more than a slight impact on her ability to perform basic work activities. *Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D.Ala. 2002). I, 791 F.2d 1544, 1547 (11th Cir. 1986).

The Grids take into account an individual's intellectual capacities by including education as a factor when directing a finding of disability. 20 C.F.R. § 416.964, pt. 404, subpt. P, app. 2. Plaintiff has not shown that she is more limited in knowledge and intelligence than is accounted for by the Grids. The ALJ acknowledged that Plaintiff had a limited education and used the appropriate Grid rule (Tr. 15). Because Plaintiff has not shown that she a medically determinable impairment that causes limitations in knowledge and intelligence and because the Grids adequately account for her level of intellectual ability, the ALJ's use of the Grids was appropriate.

The ALJ also determined that Grid rules 201.24 and 201.25 satisfied the Commissioner's burden of showing that work existed in significant numbers in the

national economy that Plaintiff could perform. See 20 C.F.R. §§ 416.969, 416.969a(b); *Heckler v. Campbell*, 461 U.S. 458, 461-62, 470 (1983); *Phillips*, 357 F.3d at 1239-40, 1242-43; *Wolfe*, 86 F.3d at 1078. Therefore, the Grids provided substantial evidence to support the ALJ's conclusion that Plaintiff was not disabled.

### (2) THE ALJ PROPERLY FOUND PLAINTIFF'S STATEMENTS ABOUT THE EXTENT OF HER SYMPTOMS TO BE PARTIALLY CREDIBLE

The ALJ must assess Plaintiff's subjective complaints of pain and other symptoms in accordance with the regulations and the Eleventh Circuit pain standard. 20 C.F.R. § 416.929. The regulations direct that symptoms will be determined to diminish capacity for basic work activities and, therefore, be reflected in the RFC to the extent that the alleged limitation due to that symptom is determined to be consistent with the objective medical evidence and other evidence. 20 C.F.R. § 416.929(c)(4); SSR 96-7p. The Eleventh Circuit has interpreted this requirement to mean that Plaintiff must provide evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom or that the medical condition is so severe that it can reasonably be expected to give rise to the alleged symptom. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). After evaluation of a Plaintiff's symptoms, the Eleventh Circuit pain standard allows the ALJ to discredit a Plaintiff's subjective testimony if he "articulates explicit and adequate reasons for doing so."

The ALJ articulated explicit and adequate reasons for finding Plaintiff's subjective complaints and symptoms not credible to the extent she alleged. (Tr. 12-14). The ALJ contrasted Plaintiff's complaints with the objective medical evidence and other evidence and found that her statements were inconsistent and therefore not credible (Tr. 13-14). For instance, Plaintiff complained of shortness of breath due to COPD and asthma, however, Dr. Cardiff found that Plaintiff's pulmonary function tests were normal (Tr. 14, 149). Plaintiff also complained of severe back pain (Tr. 24-25) and of problems, kneeling, bending, sitting, and walking (Tr. 26). However, Dr. Cardiff found Plaintiff had normal gait without the need for an assistive device and almost full strength in her extremities (Tr. 14, 149). Plaintiff's range of motion in her lumbar spine was normal, indicating she had full ability to bend forward, although she had slightly reduced motion for extension and lateral flexion (Tr. 157). Dr. Cardiff also found that in contrast to complaints of left shoulder problems (Tr. 119), her range of motion for that shoulder was completely normal (Tr. 157). Dr. Cardiff opined that Plaintiff had the ability to sit, stand, and walk a short distance and that she could lift and handle lightweight objects (Tr. 14, 150), further undermining Plaintiff's allegations that she had limitations in those areas that would prevent her from performing sedentary work.

The ALJ also properly considered Plaintiff's treatment history when evaluating her complaints. 20 C.F.R. § 416.929(c)(3)(v); SSR 96-7p; *Ellison v. Barnhart*, 355 F.3d 1271, 1275 (11th Cir. 2003); *Dyer v. Barnhart*, 395 F.3d 1210, 1211 (11th Cir. 2005). The ALJ noted that although Plaintiff complained of asthma, after receiving treatment in January 2008, she needed no further hospitalization and was no longer taking medication (Tr. 25,

14

147).

Plaintiff was also seen at the emergency room for a variety of other conditions, but never for a complaint of severe back pain (Tr. 159-217), although she had alleged that she had experienced pain for several years (Tr. 148). Plaintiff's activities of daily living, as noted by the ALJ, also undermine the credibility of her subjective complaints (Tr. 14). 20 C.F.R. § 416.929(a), (c)(3)(i); SSR 96-7p. Despite her impairments, Plaintiff was able to perform light housework, including doing laundry, cooking, shopping, driving, and assisting with the care of her mother (Tr. 14, 22, 112-15). She was also able to take care of her personal needs and did not need assistance (Tr. 114). In terms of work activities, Plaintiff attempted to return to her most recent job as a hostess in January 2008 but was soon after let go (Tr. 22-24). After her alleged date of disability of January 13, 2008 (Tr. 59), she was able to hold a job as a care giver and only stopped in March 2008 because she was no longer needed (Tr. 13, 149).

Plaintiff does not directly attack the ALJ's reasoning for discrediting her statements, rather she offers that it is "reasonable to conclude" that her statements regarding her symptoms were credible given her impairments and the observations by Dr. Cardiff. However, even if an opposing credibility determination is equally reasonable, as long as the ALJ's finding is supported by substantial evidence, it must stand. *Crawford*, 363 F.3d at 1159.

Thus, substantial evidence supports the ALJ's determination that Plaintiff's statements were not entirely credible because her statements were not consistent with the objective medical evidence, treatment history, or her activities of daily living (Tr. 12-15).

### (3). THE ALJ IMPROPERLY ASSESSED PLAINTIFF'S TREATMENT HISTORY FOR OBESITY AND PAIN

Plaintiff argues that the ALJ improperly assessed her treatment history for obesity and back pain. Plaintiff contends that the ALJ based his denial of benefits on an assumption that she had not followed the recommendations of physicians regarding her obesity, made no efforts to lose weight, and was living a sedentary lifestyle. Plaintiff's argument is without merit. The ALJ did not base his denial of benefits on the failure to follow prescribed treatment and neither did the ALJ's consideration of Plaintiff's treatment history for obesity have a "direct impact on his ultimate decision to deny her benefits." *Ellison*, 355 F.3d at 1275; *Mack v. Astrue*, 2010 WL 1049797, at *4 (M.D.Fla. Mar. 22, 2010) (unpublished); *Ramsey v. Comm'r Soc. Sec.*, 2010 WL 5209321, at *5 (M.D.Fla. Nov. 22, 2010) (unpublished). The ALJ merely mentioned a failure to follow treatment for obesity, and based his finding that Plaintiff was not disabled upon an evaluation of the record as a whole and by following the sequential evaluation process (Tr. 11-16). The ALJ actually determined Plaintiff's obesity a severe impairment and, as recognized by Plaintiff in her brief - accounted for the effect of obesity on her mobility (Tr. 11-12). Plaintiff has not shown that she has been harmed by the ALJ's mention of a failure to follow treatment because Plaintiff has not shown she otherwise would be entitled to benefits. SSR 02-01p. The ALJ was not required to make a finding that treatment was prescribed or that if followed the treatment would restore her ability to work because he did not deny benefits based on a failure to follow treatment (Tr. 11-16).

Substantial evidence exists to support the ALJ's decision that Plaintiff is not disabled even without his statement regarding Plaintiff's treatment history for obesity and therefore his statement regarding a failure to follow treatment is harmless (Tr. 11-16). *Ellison* 355 F.3d at 1275.

Plaintiff also argues that the ALJ erred when considering Plaintiff's failure to obtain treatment for conditions of obesity and pain. The ALJ stated in his decision in regards to obesity that "[t]he record reflects no actual treatment for this alleged impairment" and in regards to pain that "[Plaintiff has] failed to avail herself of. . . potential sources of medical treatment, again suggesting to the [ALJ] that the level of severity of pain of which she complaints [sic] is not accurate, as she is not seeking additional medical treatment" (Tr. 14).

Both the regulations and the law of the Eleventh Circuit permit the ALJ to consider treatment history when determining the credibility of a Plaintiff's statements. 20 C.F.R. § 416.929(c)(3)(v); *Ellison*, 355 F.3d at 1275; *Dyer*, 395 F.3d at 1211; *Wolfe*, 86 F.3d at 1078; *Watson v. Heckler*, 738 F.2d 1169, 1173 (11th Cir. 1984).  When failure to receive treatment is not the sole basis for the ALJ's decision of denial of benefits, the ALJ has not committed reversible error if he considers treatment history without considering Plaintiff's ability to afford treatment. *Ellison*, 355 F.3d at 1275, *Stratton v. Comm'r of Soc. Sec.*, 2010 WL 672841, at *13 (M.D.Fla Feb. 23, 2010) (unpublished).

Furthermore, contrary to  Plaintiff's allegation that the ALJ made his decision "without the benefit of any evidence whatsoever" on Plaintiff's ability to receive free or low-cost medical care, evidence exists in the record that Plaintiff received such care.

While visiting Raulerson Hospital in January 2008, Plaintiff's attending physician and a specialist who examined Plaintiff noted respectively that she "goes to the clinic locally here" (Tr. 161) and that she "follows regularly at the clinic" (Tr. 163). The same was also noted in February 2008 when Plaintiff's attending physician noted that "[s]he will follow up with her physician in the clinic" (Tr. 160). This evidence contradicts Plaintiff's allegations that she could not afford medical care. (Tr. 25).

The ALJ's observation about Plaintiff's treatment history is also supported by the fact that Plaintiff visited the emergency room several times throughout 2005 and 2008 for a variety of conditions, but never with a complaint of back pain (Tr. 159-217). Her emergency room visits (Tr. 159-217), and the fact that she was receiving regular care at clinic (Tr. 160, 161, 163), does not support her statements that she had no money to afford medical care (Tr. 25). Whether a Plaintiff has received treatment for a condition is probative evidence for assessing the severity of that condition and the ALJ properly took Plaintiff's treatment history for obesity and back pain into account.

### III. CONCLUSION

The ALJ determined Plaintiff's impairments, either singly or in combination, is not of such severity or duration as to meet or equal an impairment in Appendix 1, Subpart P, Regulations No. 4, so as to find the Plaintiff disabled by reason of medical considerations alone. Substantial evidence shows the ALJ properly considered the Plaintiff's subjective complaints of pain, functional limitations and the medical evidence and determined Plaintiff could perform the full range of sedentary work. Therefore, the Plaintiff is found not disabled as directed by Medical-Vocational Rules ("GRIDS") 201.24 and 201.25,

Section 1614l(a)(3)(A) of the Social Security Act and based on the application for supplemental security income protectively filed on February 25, 2008.

The Clerk will enter a judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the decision of the Commissioner and thereafter close the file.

**DONE AND ENTERED** at Fort Myers, Florida, this 13th day of May, 2011.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE


The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:


John F. Rudy, III, A.U.S.A.
Counsel of Record